# SECURITY AGREEMENT

THIS AGREEMENT is made and entered into this 24th day of November, 1998, by and between BEST RESCUE SYSTEMS, INC. and ROBERT KIRKLAND (hereinafter collectively referred to as the "Pledgor") UNITED PUBLIC WORKERS MUTUAL AID FUND (hereinafter referred to as the "Pledgee").

WHEREAS, contemporaneously with the execution of this Agreement, Pledgor has executed a Promissory Note in the principal amount of Two Hundred Fifty Thousand Dollars ($250,000.00) plus interest at the rate of eighteen percent (18%) per annum simple interest payable to Pledgee attached hereto at Exhibit "A" (the "Note");

WHEREAS, as security for payment of the Note Pledgor has agreed to pledge certain assets as more specifically described herein;

WHEREAS, Pledgor has executed a binding letter of intent of even date herewith (the "Letter of Intent");

WHEREAS, the Letter of Intent addresses a due diligence evaluation of and investment in Best Rescue Systems, Inc.;

WHEREAS, the loan made pursuant to the Note constitutes interim financing for operation of Best Rescue Systems, Inc., the Note will be repaid when long-term financing is obtained, long-term financing is expected to be funded in January, 1999, proceeds from the Note shall be deposited in a special escrow bank account established in accordance with the Letter of Intent, proceeds from the Note shall be disbursed solely by Albert Hewitt, The Hewitt Company for Pledgee, and proceeds from the Note shall be used solely for the purposes specified in the Letter of Intent; and

NOW, THEREFORE, in consideration of the above recitals, which shall be deemed an integral part of this Agreement, and in consideration of the mutual Agreements and covenants herein contained, the parties hereto, intending to be legally bound thereby, agree as follows:

1. <u>Grant of Security Interest</u>. In order to secure (a) the payment of all sums due on the Note, and (b) the performance of all of the covenants, stipulations and agreements set forth in the Note, this Agreement, and the Letter of Intent (collectively, the "Secured Indebtedness"), Pledgor hereby grants to Pledgee, a first priority security interest in the assets more specifically described in Exhibit "B" attached hereto (the "Assets"). Subject to the terms of this Agreement, Pledgee shall have a valid first priority perfected lien in the Assets.

2. <u>Term</u>. This Agreement shall remain in effect until the Secured Indebtedness has been paid in full to Pledgee.

3. <u>Ownership and Possession of the Assets</u>. Except as otherwise provided in this Agreement, title to the Assets shall vest in and remain with Pledgor. Pledgor may retain

1

**EXHIBIT 3**

possession of the Assets until (i) demand by Pledgee, or (ii) transfer to Pledgee as required under paragraph 6 below.

4. <u>Voting Rights and Dividends to Pledged Shares.</u> Pledgor shall have the right to vote the shares of stock Corporation. Pledgor will not be entitled to any cash or property distributions or dividends from the Corporation attributable to the Pledged Shares until the Secured Indebtedness has been paid in full, except as directed by a court of competent jurisdiction. The amount of any such distributions or dividend declared by the Corporation attributable to the shares of stock of the Corporation owned by Pledgor shall be credited against any amounts due under the Note and this Agreement. In the event that Pledgor is in default under this Agreement (as described in Paragraph 6), Pledgee shall have the right to vote the Pledged Shares on all corporate matters from the date of default until such default is cured.

5. <u>Restriction on Increase of Credit Limits.</u> The Corporation shall not increase its credit or borrowing limit under any existing line of credit, increase its credit or borrowing limit under any credit card, increase its credit or borrowing limit with any supplier, or obtain any new credit by way of Note, credit card or otherwise without the written approval of Pledgee.

6. <u>Events of Default</u>. The following shall constitute an event of default (hereinafter referred to as the "Event of Default") hereunder:

    (a) The default by Pledgor in the payment of any principal or interest on the Note when due and payable in accordance with its terms.

    (b) The default by Pledgor in any of its agreements, covenants or obligations pursuant to the Note, this Agreement or the Letter of Intent.

    (c) The default by Pledgor under any Note or credit document or instrument to which Pledgor is a party.

    (d) The making by the Pledgor of an assignment for the benefit of creditors.

    (e) The appointment of a trustee, receiver or similar officer of any court for the Pledgor or for a substantial part of the property of the Pledgor, whether with or without its consent.

    (f) The institution of bankruptcy, composition, reorganization, insolvency or liquidation proceedings by or against the Pledgor without such proceedings being dismissed within thirty (30) days from the date of the institution thereof.

7. <u>Remedies</u>.

    (a) Upon the occurrence of any Event of Default, Pledgee shall have all of the following rights and remedies:

    (i)    The right to foreclose or otherwise enforce its rights as provided under Florida law or as provided for in this Agreement, or in any manner permitted by law.

    (ii)    The right to take possession of the Assets.

    (iii)    The right to exercise all of the rights, powers and remedies of an owner with respect to the Assets.

    (iv)    The right to sell or otherwise dispose of the Assets in any manner permitted by law.

(b)    Any right, power, or remedy provided for in this Agreement shall be in addition to any other right a party may have at law or in equity.

8.    <u>Warranties and Covenants of Pledgor</u>. Pledgor warrants, covenants and agrees that the Assets are duly and validly pledged as security for the Secured Indebtedness in accordance with state and federal law. Pledgor further warrants that Pledgee has a valid, first priority lien upon the Assets and that Pledgor will defend the same against the claims and demands of all persons. Pledgor represents and warrants to Pledgee that Pledgor has good title to all of the Assets, free and clear of all claims, security interests, mortgages, pledges, liens, charges and other encumbrances of any nature whatsoever, except for the pledge to Pledgee made under this Agreement. Pledgor shall not, while this Agreement is in effect, sell, assign, gift, pledge, transfer, encumber, or otherwise dispose of Pledgor's interest in the Assets without prior written consent of Pledgee which consent may be withheld by Pledgee in Pledgee's sole discretion. Pledgee agrees to indemnify and Pledgee agrees to indemnify and hold hereunder Pledgee against and in respect of any and all losses, damages, deficiencies or liabilities incurred by Pledgee as a result of any misrepresentation, breach, breach of warranty or nonfulfillment of any covenant or agreement on the part of Pledgor under this Agreement, or default, or as a result of any misrepresentation contained in or occasioned by any instruments furnished or to be furnished by Pledgor under this Agreement, in any and all assessments, judgments, costs and legal or other reasonable expenses incidental to any of the foregoing, including, but not limited to, attorney's fees, paralegal fees, law clerk fees, and other legal costs and expenses both at trial and on appeal.

9.    <u>Recording of Security Interest</u>. Pledgee shall have the right to record its security interest by filing a UCC-1 with the Florida Secretary of State and make such other filings to signify the security interest as are permitted. In the event Pledgee records its security interest, Pledgee agrees to terminate such filing within a reasonable time after Pledgor's satisfaction of all obligations under the Note and this Agreement.

10.    <u>Cross Default</u>. Any default of the Pledgor under this Agreement shall constitute a default of Pledgor under the Note and the Letter of Intent, each of which is integral to and a consideration for Pledgee's promises hereunder.

3

11. **Attorney-in-Fact.** Upon the occurrence of any Event of Default, Pledgor hereby irrevocably appoint Pledgee as their agent and attorney-in-fact to exercise such rights and remedies as Pledgor might exercise with respect to the Collateral or any part thereof, including, without limitation, the right to (a) perfect, enforce, foreclose and/or realize upon any security now or hereafter granted to secure the Secured Indebtedness, and/or enforce all rights in and to such security, (b) preserve the Assets and the value thereof, (c) transfer the Assets to its own or its nominee's name upon the occurrence of an Event of Default hereunder, and (d) take any other action it deems advisable, with respect to the Assets or any part thereof.

12. **Release of the Security Interest.** Upon payment in full of the Secured Indebtedness to Pledgee, and upon performance by Pledgor of all of the other covenants and agreements of Pledgor contained in the Note and this Agreement, Pledgee will release its security interest in the Assets.

13. **Execution of Additional Documents.** Pledgor agrees to execute those documents reasonably requested by Pledgee to perfect the security interest granted herein.

14. **No Other Security Interest in Assets.** Pledgor warrants that the Assets have not heretofore been pledged or assigned to any party other than Pledgee.

15. **Prohibition of Sale or Further Encumbrance of Assets.** During the term of this Agreement, Pledgor shall not sell, assign, dispose of, or further encumber the Assets except for those assets ordinarily sold in the normal course of business.

16. **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, personal representatives, successors or assigns.

17. **Notices.** To be effective, a notice or other communication required or permitted under this Agreement must be in writing. A notice is effective when delivered to or, if mailed, when received at the address specified below in this subsection, or at such other address or attention as the intended recipient has specified in a writing delivered to the sender:

If to Pledgor:   Best Rescue Systems, Inc.
                 Attn: Robert Kirkland
                 2818 Yucca Street
                 Orlando, Florida 32807

If to Pledgee:   United Public Workers Mutual Aid Fund
                 Attn: Gary Rodrigues
                 1426 North School Street
                 Honolulu, HI 96817

18. **Waiver or Modification.** No waiver or modification of this Agreement or of any covenant, condition or limitation herein contained shall be valid unless in writing and duly executed by the party to be charged therewith. Furthermore, no evidence of any waiver or modification shall be offered or received in evidence in any proceeding, arbitration or litigation

4

between the parties arising out of or affecting this Agreement or the rights or obligations of any party hereunder unless such waiver or modification is in writing and duly executed as aforesaid. The provisions of this paragraph may not be waived except as herein set forth.

19. **Multiple Copies or Counterparts of Agreement.** The original and one or more copies of this Agreement may be executed by one or more of the parties hereto. In such event, all of such executed copies shall have the same force and effect as the executed original, and all of such counterparts, taken together, shall have the effect of a fully executed original.

20. **Costs and Expenses.** The prevailing party shall have the right to recover all costs and expenses, including, without limitation, reasonable attorneys' fees both at trial and on appeal incurred or paid by such party in any action to interpret or enforce the Note or this Agreement.

21. **Applicable Law, Venue, and Binding Effect.** This Agreement shall be construed and regulated under and by the laws of the State of Florida, without reference to Florida's choice of law decisions, and any action brought to enforce or interpret this Agreement shall be brought only in the federal or state court having competent jurisdiction and sitting in Orange County, Florida. This Agreement shall inure to the benefit of and be binding upon the parties hereto and their heirs, personal representatives, successors and assigns.

22. **Validity and Enforceability.** If any provision of this Agreement shall be held invalid or unenforceable, such invalidity or unenforceability shall not, if possible, affect the validity or enforceability of any other provision of this Agreement, and this Agreement shall, if possible, be construed in all respects as if such invalid or unenforceable provision were not contained herein.

The parties have executed this Agreement on the day and year first above written.

PLEDGOR – BEST RESCUE
SYSTEMS, INC.

By: _____

Printed Name: Robert Kirkland

Title: PRESIDENT + CEO


_____
ROBERT KIRKLAND

5

PLEDGEE – UNITED PUBLIC
WORKERS MUTUAL AID FUND

By: _____
    Gary Rodrigues

Title: _____
       State Director and
       Administrator

EXHIBIT "B"

ASSETS SUBJECT TO SECURITY INTEREST

1. All property, equipment and assets comprising the business of Best Rescue Systems, Inc. (the "Business").

2. All interest as lessee in and to all leases or rental arrangements of the Business together with security deposits and advance lease or rental payments.

3. All interest as lessee in and to all leases or rental agreements of the Business for telephone systems, signs, communication equipment and office and other equipment.

4. All deposits paid to companies for services to the Business, including without limitation, telephone, electric and security services.

5. All inventory and merchandise of the Business.

6. All accounts receivable and all rights under agreements to sell or otherwise convey any assets of the Business and all cash and noncash proceeds thereof.

7. All rights of to any fictitious or other names, trade names, trademarks, service marks, logos and copyrights.

8. All furniture, furnishings, appliances and equipment and all other tangible personal assets of the Business.

9. All rights in and to the personal rescue products developed by or for Best Rescue Systems, Inc. or Robert Kirkland, including without limitation, the system for lowering one or two individuals from multi-story buildings during emergency and disaster situations.

10. All shares of stock of Best Rescue Systems, Inc. issued to Robert Kirkland and all unissued shares of stock of Best Rescue Systems, Inc. (the "Pledged Shares").

7