**MUTUAL AID FUND TRUSTEES MEETING**
**UPW Building**
**Saturday, April 1, 2000**

## AGENDA

1. Call to order.

2. Roll Call. **[ROLL CALL]**

3. Approval of Agenda. **[AGENDA]**

4. Approval of Minutes for the February 26, 2000 meeting. **[MINUTES]**

5. Investments.

   a. Agency Agreement. **[ITEM 1]**

   b. Investment Management Fee Schedule. **[ITEM 2]**

   c. Investment Policy Statement. **[ITEM 3]**

6. Adjournment.

EXHIBIT C

# AGENCY AGREEMENT

| | |
|---|---|
| ☐ | CUSTODY |
| ☐ | INVESTMENT ADVISORY |
| ☐ | INVESTMENT MANAGEMENT |

## IDENTIFICATION OF PARTIES

A. "We," "Us," "Our" refer to FIRST HAWAIIAN BANK, Trust and Investments Division, whose mailing address is P. O. Box 3708, Honolulu, Hawaii 96811 and whose street address is 999 Bishop Street, 3rd Floor, Honolulu, Hawaii 96813.

B. "You" and "Your" refer to the following person(s):

Name     __UPW Local 646 Mutual Aid 501(c)(9) TRUST__
Address  __c/o Mr. Gary W. Rodrigues, 1426 North School Street, Honolulu, HI 96817__
Citizenship: USA __x__     Other _____
State of Domicile: Hawaii __x__    Other _____
Social Security No. or Federal I.D. No. __99-0231523__
Telephone No.: Home (_____) _____   Office (__808__) __847-2631__

Name _____
Address _____
Citizenship: USA _____     Other _____
State of Domicile: Hawaii __    Other _____
Social Security No. or Federal I.D. No. _____
Telephone No.: Home (_____) _____   Office (_____) _____

## I. CUSTODY

As your Agent, we will provide the following services:

A. **Safekeeping.** We will hold the assets you deposit with us for safekeeping. The assets will be held in the name of our nominee and may be held in a mainland depository to enable us to carry out your investment instructions efficiently.

B. **Additional Assets.** Subject to our approval, you may from time to time deliver to us additional assets to be held in your account.

C. **Withdrawal of Assets.** You may withdraw any of the assets at any time by giving us reasonable notice.

D. **Investments.** We will invest or otherwise dispose of the assets and their proceeds in accordance with your instructions.

E. **Accounting Statements and Inventory.** We will furnish you with an accounting statement and inventory quarterly, showing all receipts and payments that you have authorized us to make from your account.

F. **Your Right to Inspection.** You may inspect the assets and/or our records relating to the assets at all reasonable times during our banking hours.

G. **Collection of Income and Principal.** We are authorized to collect interest, dividends, and all other forms of income; to surrender for payment maturing obligations and obligations called for redemption.

H. **Distributions.** We will pay you the net income (the income received from the assets less our fees) received from the assets as you instruct from time to time.

I. **Routine Proxies.** You will retain all voting rights for securities deposited with us. We will arrange for proxies and other corporate materials to be sent to you at your current address.

J. **Issuer's Request for Information.** We will not release your name, address, and security position to requesting companies in which you hold securities.

K. **Reimbursement for Fees and Costs.** You agree to reimburse us for any liability, expense, or attorney's fees we incur resulting from the exercise of our obligations and authority under this agreement. We will not be liable for loss or damage to the assets caused directly or indirectly by forces beyond our reasonable control. We are not required to follow any instructions of yours which, in our judgment, may subject us to liability or expense. We are not required to prosecute or defend any action on your behalf.

L. **Our Fees.** For the services described in the Agreement, you agree to pay us a fee based on our fee schedule currently in effect. We will give you at least 30 days notice prior to any changes to this fee schedule. You will be bound by any such fee changes unless you send us written notice of termination of this Agreement.

M. **Death or Other Termination of our Authority (which ever is applicable).**

   a. Until we receive written notice of your death or other termination of our authority, all actions that we take in good faith will be binding upon you, your heirs, your successors, personal representatives, and assigns. You agree to indemnify us for any loss or liability resulting from any actions taken by us after such termination of authority but before receipt of written notice; or

   b. Until we receive written notice of termination of our authority, all actions that we take in good faith will be binding upon your Association, your Board of Directors, and their Successors. You agree to indemnify us for any loss or liability resulting from any actions taken by us after such termination of authority but before receipt of written notice.

N. **Termination of Agreement.** Each party hereto reserves the right to terminate this Agreement upon reasonable written notice to the other party. Termination shall be effective upon receipt of the notice, and all funds will be distributed to you.

O. **Proxy Disclosure.** You do NOT wish the name, address, and security position(s) in this account to be disclosed to any requesting company as adopted in the Securities and Exchange Commission Rule 14b-1(c) for any securities held in nominee name by us. You understand that UNLESS YOU OBJECT IN WRITING, we will be required to disclose your name, address, and security position(s) to the requesting company.

P. **Special Instructions.** Any further special agreed upon instructions are as follows:
(if none check here: ☐ None)

UPW LOCAL 646 MUTUAL AID
501(c)(9) TRUST

_____
GARY RODRIGUES

FIRST HAWAIIAN BANK, CUSTODIAN
Trust and Investments Division

By _____
Its: _____

Date  03/20/2000

## II. INVESTMENT MANAGEMENT SERVICES

A. **Management of Assets.** You authorize us to manage and invest the assets in our absolute discretion. You specifically authorize us to:

1. Purchase stocks, bonds, or other securities or obligations of any corporation or governmental body;

2. Sell or otherwise dispose of any of the assets (including the writing of covered options) and invest the proceeds (or capital gains) of such disposition;

3. Reinvest the principal of all securities and other assets as they mature or are redeemed or sold unless we receive written instructions from you to do otherwise;

4. Approve or join in any plan or agreement of reorganization, consolidation, merger, sale of the assets, or other action or any corporation related to the assets;

5. Exercise all conversion privileges, options, and rights related to the assets;

6. Exercise the rights and powers which may be exercised by a person who holds the assets in his own right;

B. **Termination of Agreement.** Each party hereto reserves the right to terminate this Agreement upon reasonable written notice to the other party. Termination shall be effective upon receipt of the notice, and all funds will be distributed to you.

UPW LOCAL 646 MUTUAL AID
501(c)(9) TRUST

_____
GARY RODRIGUES

FIRST HAWAIIAN BANK
INVESTMENT MANAGER
Trust and Investments Division

By _____
Its:

Date _____03/20/2000_____

# INVESTMENT MANAGEMENT
## FEE SCHEDULE
### INSTITUTIONAL FUNDS

**ANNUAL FEE**

Fee is based on the market value of the trust assets and is calculated and charged monthly.

| Equity/Balanced | Basis Points |
|---|---|
| On the first $5 million | 80 |
| On the next $5 million | 70 |
| On all over $10 million | 60 |

| Fixed Income | Basis Points |
|---|---|
| On the first $5 million | 45 |
| On the next $5 million | 40 |
| On all over $10 million | 35 |

| Short-Term Fixed Income | Basis Points |
|---|---|
| On the first $20 million | 25 |
| On all over $20 million | 20 |

| Cash Management | Basis Points |
|---|---|
| On all amounts | 15 |

Assets custodied outside First Hawaiian bank will be assessed an additional fee.



FINANCIAL  MANAGEMENT  GROUP

## SERVICES COVERED INCLUDE:

- Custody of assets
- Assistance with establishing investment goals and objectives
- Executing and tracking of buy and sell orders for your portfolio
- Regularly scheduled meetings to review portfolio results
- Evaluate any changes affecting your investment goals
- Collection of income from assets (credited to the account on the payable date)
- Automatic daily investment of cash balances
- Periodic statements

## MISCELLANEOUS SERVICES:

- If additional services are desired, please request the Miscellaneous Services fee schedule.

Services covered are not applicable to Cash Management.

RECEIVED BY:

_[signature]_

____3-17-00____
Date

**NOTE:**
Fee schedule is subject to change.



F I N A N C I A L   M A N A G E M E N T   G R O U P

# INVESTMENT POLICY STATEMENT

I. Introduction

    A.    It is the intent of the **UPW LOCAL 646 MUTUAL AID 501(c)(9) TRUST** Investment Management Account (hereafter referred to as "The Client") that First Hawaiian Bank (hereafter referred to as the "The Investment Manager") provide discretionary investment management services in line with the objectives and consistent with the philosophy of a "Prudent Investor".

    B.    It is also the intent of the Client to establish a philosophy and a set of objectives to guide the funds toward their desired level of performance.

II. Purpose of the Investment Policy Statement:

This Investment Policy Statement is set forth in order that:

    A.    The Client and the Investment Manager have a clear and mutual understanding of the investment objectives and policies of the Client.

    B.    The Investment Manager is given guidance and limitation in investing the Client's funds.

    C.    The Client has a meaningful basis for the evaluation of the portfolio management of the Investment Manager.

    D.    It is intended that these policies and objectives are meaningful for guidance in the management of these funds, yet sufficiently flexible to be practical, given changing business, economic, and investment market conditions.

    E.    If at any time the Investment Manager feels that the objectives cannot be met or that the guidelines or restrictions are either imprudent or overly restrictive, the Investment Manager will notify the Client in writing, but will first seek to discuss the issues with the Client.

III. Statement of Objectives:

    A.    The Client seeks a balance between capital appreciation and generation of income. Achievement of this objective should be done in a manner such that the purchasing power of these assets is enhanced over the investment horizon.

IV. Specific Performance Objectives:

    A. The portfolio's performance will be compared to an equally weighted composite return of 70% Standard & Poor's 500 Index, 25% Lehman Brother's Government/Corporate Bond Index and 5% 90-Day Treasury Bill Index.

    B. The above objectives will be reviewed annually, but will be judged over a five year cycle.

V. Investment Guidelines

    A. The Client recognizes that risk, volatility, and the possibility of loss in purchasing power are present in varying degrees with all investment vehicles.

    B. While high levels of risk are to be avoided, as evidence by high volatility and low quality rated securities, the assumption of risk is warranted in order to allow the Investment Manager the opportunity to achieve satisfactory long-term results consistent with the objectives of the fund.

VI. Approved Assets:

    A. Common Stock.

    B. U.S. dollar denominated American Depository Receipts.

    C. Direct Obligations of the U.S. Government and its Agencies.

    D. Corporate Obligations.

    E. Qualifying cash equivalent securities may include money market funds, such as the Bishop Street Money Market Fund, and short term obligations of the U.S. Government and its Agencies.

    F. Mutual Funds.

VII. Asset Allocation:

    A. It will be the function of the Investment Manager to adhere to asset allocation guidelines as established by the Client at the time the Investment Manager assumes initial responsibility for the funds.

    B. The Client expects that they will implement changes in asset allocation on a step by step, sound, orderly and professional manner.

2

C. Asset allocation will fall within the following guidelines:

Equities
Target      70%
Maximum     80%
Minimum     60%

Fixed Income
Target      25%
Maximum     35%
Minimum     15%

Cash & Cash Equivalents:
Target      5%
Maximum     15%
Minimum     1%

VIII. Investment Criteria:

A. All investments will be limited to securities for which there exists a recognized market or exchange providing ready liquidity.

B. Common Stock, including American Depository Receipts, and preferred stock, will be listed on a principal U.S. Stock Market, (the New York Stock Exchange, the American Stock Exchange, Pacific Exchange, NASDAQ, OTC).

C. Individual common stock and fixed income securities will be U.S. dollar denominated.

D. Prudent diversification of equity investments will be achieved through various companies within various industry classifications. Individual equity investments will be limited in size to no more than 10% of the portfolio at market.

E. Individual fixed income securities must be rated at the time of purchase A or better from Standard & Poor's and/or A2 from Moody's Investor Service.

F. Unrated U.S. Treasury or Agency securities will be considered AAA equivalent securities.

G. Holdings of any single fixed income issuer and/or its affiliates (excluding Direct Obligations of the U.S. Government) will be limited to 10% of the fixed income allocation at cost.

IX. Prohibited Assets and/or Transactions

The Investment Manager shall have powers of investment discretion within the guidelines of the articles enumerated herein. The following assets and/or transactions are prohibited except when authorized in writing by the Client.

A. Investments in companies which, including predecessors, have a record of less than three years of continuous operation.

B. Commodities.

C. Lettered Stock, Private Placements, and Limited Partnerships.

D. Selling "naked" puts and/or calls.

E. Fixed income instruments which are subject to call or have imbedded options.

F. Derivative securities of any kind.

G. The use of leverage in the structure of the securities held.

H. The use of adjustable rate issues with coupons which move inversely to an index.

I. Tax exempt securities.

J. Securities of the Investment Manager, its parent or subsidiaries.

K. Foreign securities, unless listed on a principal U.S. Exchange (e.g., ADRs traded on these markets are permitted).

L. The Investment Manager shall not buy securities on margin, engage in the short sale of securities, or maintain a short position.

M. The Investment Manager shall not engage in any transaction where it acts as principal.

N. The Investment Manager shall not deal with the assets of the portfolios in its own interest or for its own account.

O. The Investment Manager shall not act in any capacity in any transaction involving the portfolio on behalf of a party (or represent a party) whose interests are adverse to the interests of the portfolio or the interests of its beneficiaries.

  P.  The Investment Manager shall not receive any third party compensation for its own account from any party in connection with a transaction involving the assets of the portfolios.

X.  Communication

  A.  The Investment Manager will be expected to keep the Client informed on a timely basis of major changes in its investment outlook, investment strategy, asset allocation, and other matters affecting its investment policies or philosophy.

  B.  The Investment Manager will provide quarterly performance reports to the Client which will consist of:

   1.  A letter which outlines our present, and prospective economic and stock market conditions, the possible impact on investments in the managed funds.

   2.  A one page performance sheet which outlines the performance of the total account, and its component parts compared against their appropriate benchmarks.

   3.  A one page equity summary that lists and describes the top ten equity holdings in the portfolio. The equity summary will also list the sector allocations and their comparative weighting against the Standard & Poor's 500 Index Benchmark.

   4.  A one page fixed income summary that lists the fixed income ratings, the sector weightings, and the maturity distribution of the fixed income investments. The fixed income summary will also compare the average coupon, the current yield, the yield to maturity, the average life, and the duration of the fixed income investments against the Lehman Brother's Government/Corporate Bond Index.

XI.  Liquidity Requirements

  A.  It is expected that funds may be withdrawn from the plan for distribution purposes. The Client expects that its representative will be able to provide the Investment Manager with 30-days notice of intent to withdraw funds.

XII.    Monitoring and Evaluating the Investment Performance of the Managed Funds.

Once a year the Investment Manager will meet with the Client to:

- A.    Review the investment philosophy pertaining to the managed funds and discuss any suggested changes in policy related thereto.

- B.    Review any deviations in philosophy or discipline which may have occurred during the preceding period and the effect thereof;

- C.    Review any significant changes in management, research, personnel, or ownership at the investment management firm; and,

- D.    Review and discuss any other conditions or situations which might effect or improve the performance of the investments in the managed accounts.


The Terms and Conditions of this Investment Management Agreement have been reviewed and agreed to by:


UPW LOCAL 646 MUTUAL AID
501(c)(9) TRUST


_____    3-17-00
GARY W. RODRIGUES                    DATE


_____    3/20/00
INVESTMENT MANAGER                   DATE
FIRST HAWAIIAN BANK

6