IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

STEVEN DE COSTA, IN HIS            )        CIVIL NO. 03-00598 DAE-LEK
REPRESENTATIVE CAPACITY            )
AS CHAIRPERSON OF THE              )
BOARD OF TRUSTEES OF               )
UNITED PUBLIC WORKERS,             )
AFSCME, LOCAL 646, AFL-CIO,        )
MUTUAL AID TRUST FUND,             )
REAL PARTY IN INTEREST             )
UNITED PUBLIC WORKERS              )
UNION, AFSCME, LOCAL 646,          )
AFL-CIO,                           )
                                   )
            Plaintiffs,            )
                                   )
    vs.                            )
                                   )
GARY W. RODRIGUES,                 )
                                   )
            Defendant.             )
_____   )


ORDER DENYING DEFENDANT'S
RENEWED MOTION FOR SUMMARY JUDGMENT

On November 26, 2007, the Court heard Defendant's Renewed

Motion for Summary Judgment. Charles A. Price, Esq., appeared at the hearing on

behalf of Plaintiffs; Eric A. Seitz, Esq., appeared at the hearing on behalf of

Defendant. After reviewing the motion and the supporting and opposing

memoranda, the Court DENIES Defendant's Motion.

BACKGROUND

The Mutual Aid Fund ("MAF") is an employee welfare benefit plan. It is a voluntary contribution plan that provides hospitalization and related benefits for participating employees and their dependants. Contributions to the fund are made by employees represented by United Public Workers ("UPW") or by UPW employees. Defendant served as the Plan Administrator of the MAF trust and also as State Director of the UPW. Defendant was never a trustee for the MAF trust.

The Complaint, filed on October 31, 2003, alleges that Defendant breached his fiduciary duties under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 101 et seq. ("ERISA") by making six loans to Best Rescue Systems ("Best Rescue") between November 24, 1998, and November 22, 1999, for a total of $1.1 million. The loans were as follows: $250,000 on November 24, 1998; $200,000 on February 5, 1999; $150,000 on April 26, 1999; $250,000 on June 30, 1999; $150,000 on August 24, 1999, and $100,000 on November 22, 1999. Defendant placed these loans through Albert A. Hewitt, who had recommended investments of the trust's monies into Best Rescue.

Alison Leong, a current trustee of MAF, was serving as a trustee in February 1999, along with other persons. The February 19, 1999 meeting minutes of the trustees' meeting notes that Defendant recommended investment in Best

2

Rescue.  At the June 19, 1999 trustees' meeting, the trustees received Notes to Financial Statements, which referenced the November 24, 1998, $250,000 loan to Best Rescue.  The notes indicated that the invested amount was evidenced by a promissory note, with interest only payable each month, and that the promissory note was secured by all property, equipment, and assets of Best Rescue.  The trustees were also informed that since that time, MAF trust had invested an additional $350,000 in Best Rescue on the same basis.

On September 19, 1999, Best Rescue defaulted on payments owed under the loans.  On December 15, 1999, Defendant requested that all of MAF's investments, including interest, be returned.  The money was not returned and the MAF filed a lawsuit against Best Rescue on January 31, 2000, to collect the $1.1 million.  MAF was unable to collect any money from Best Rescue, but has received some amount of money from Mr. Hewitt's insurer.

Defendant filed his renewed motion for summary judgment on October 24, 2007, seeking to dismiss all of Plaintiffs' claims.  Plaintiffs filed an opposition on November 8, 2007.  Defendant did not file a reply brief, but filed a supplemental declaration to authenticate certain exhibits that had previously been filed.

<u>STANDARD OF REVIEW</u>

Rule 56 requires summary judgment to be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>see also</u> <u>Porter v. Cal. Dep't of Corrections</u>, 419 F.3d 885, 891 (9th Cir. 2005); <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  <u>See</u> <u>id.</u> at 323.  A moving party without the ultimate burden of persuasion at trial–usually, but not always, the defendant–has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (citing <u>Celotex Corp.</u>, 477 U.S. at 323).

4

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings.  Porter, 419 F.3d  at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.").  "[A]t least some 'significant probative evidence'" must be produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."  Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence

5

and inferences must be construed in the light most favorable to the nonmoving party.  Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  Id.  However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

DISCUSSION

Defendant seeks summary judgment on all of Plaintiffs' claims. Defendant argues that Plaintiffs' claims are barred by the statute of limitations, that the MAF trust is not covered by ERISA, Defendant was not a fiduciary, and Plaintiffs failed to join indispensable parties.

I.    Statute of Limitations

Defendant asserts that a three-year statute of limitations applies to this case.  Plaintiffs argue that the six-year limitation period applies, and even if the three-year limitation period applied, Plaintiffs filed suit within that time frame.

The ERISA statute of limitations section applicable to this case provides in part that

> No action may be commenced under this subchapter with
> respect to a fiduciary's breach of any responsibility, duty,

or obligation under this part, or with respect to a violation
of this part, after the earlier of--
(1) six years after (A) the date of the last action which
constituted a part of the breach or violation, or (B) in the
case of an omission the latest date on which the fiduciary
could have cured the breach or violation, or
(2) three years after the earliest date on which the
plaintiff had actual knowledge of the breach or violation;

29 U.S.C. § 1113.  Pursuant to the statute, a court must engage in a "two-step

analysis of accrual of an ERISA action[.]"  Ziegler v. Conn. Gen. Life Ins. Co., 916

F.2d 548, 550 (9th Cir. 1990).  The court must first determine when "the alleged

'breach or violation' occurred; and second, when did [the plaintiff] have 'actual

knowledge' of the breach or violation?" Id. at 550.

     A.    Date of Breach

Courts must "first isolate and define the underlying violation upon

which . . .  [plaintiff's] claim is founded," and determine when it occurred.  Id. at

551 (citing Meagher v. Int'l Ass'n of Machinists & Aerospace Workers Pension

Plan, 856 F.2d 1418, 1422 (9th Cir. 1988)) (brackets in original).

The Complaint in the instant case alleges: Count 1 a breach of

fiduciary duty in violation of 29 U.S.C. § 1104 (a)(1)(A); Count 2 liability for

breach of fiduciary duty by Co-fiduciary, pursuant to 29 U.S.C. § 1105; and Count

3 engaging in prohibited transactions in violation of 29 U.S.C. § 1106 (a)(1)(D).

7

Each of these counts are based upon the loans made to Best Rescue between

November 1998 and November 22, 1999.  Plaintiffs claim that Defendant failed to

conduct proper due diligence on Hewitt and Best Rescue prior to making the loans,

failed to properly diversify investments, since the loans represented 40% of the

MAF trust's total assets, and failed to have written investment policies or

guidelines in place at the time the loans were made.  Accordingly, the latest date of

breach was the date of the last loan, which was made on November 22, 1999.

      B.    <u>Actual Knowledge</u>

        Next, the court must determine when the plaintiff had "'actual

knowledge' of the breach or violation."  <u>Ziegler</u>, 916 F.2d at 550.  "[A]n ERISA

plaintiff's cause of action cannot accrue and the statute of limitations cannot begin

to run until the plaintiff has actual knowledge of the breach, regardless of when the

breach actually occurred."  <u>Id.</u> at 552.  The court must make a factual inquiry into a

plaintiff's actual knowledge.  <u>Id.</u>  Actual knowledge is not satisfied by knowledge

that the fiduciary acted but, rather, requires knowledge of the breach of the duty.

<u>Waller v. Blue Cross of Cal.</u>, 32 F.3d 1337, 1341 (9th Cir. 1994).  The statute of

limitations begins to run once an individual has actual knowledge of the act that

constitutes the breach and knows the harmful effect of the act.  <u>See</u> <u>Ziegler</u>, 916

F.2d at 552. The limitations period is measured from the date that the person

8

bringing suit on behalf of the plan learned of the breach or violation.  <u>Landwehr v.</u>

<u>DuPree</u>, 72 F.3d 726, 732 (9th Cir. 1995).

Here, the person bringing the suit on behalf of the plan is Mr. Steven

De Costa, current Chairperson of the Board of Trustees of UPW, MAF trust.  Mr.

De Costa was substituted as the real party in interest in June 2007.   Defendant

argues that because current trustee Alison Leong was a trustee at the time of the

alleged breach, the limitations period should begin to run upon the date of her

actual knowledge, rather than Mr. De Costa's date of knowledge.  Defendant

claims that this date is either February 19, 1999[1], or June 19, 1999, because that is

when the trustees were aware of investments in Best Rescue, or at the latest,

January 31, 2000, since that is when MAF filed suit against Best Rescue.

Applying any of these dates results in the three-year period expiring prior to the

October 31, 2003, filing of the instant lawsuit.

Defendant's arguments lack merit.  Defendant argues only that Ms.

Leong was aware of some of the loans made to Best Rescue by June 19, 1999,

based upon meeting minutes in which the trustees were informed that loans had

---

[1]Defendant presented no evidence showing that the trustees were aware as of February 19, 1999, of any of the specific loans made.  Instead, the exhibit cited by Defendant is the meeting minutes of the June 19, 1999 trustees' meeting.  The February 19, 1999 meeting minutes only note making an investment into Best Rescue and do not reference specific loans.

been made and the basic terms of the loan.  This evidence, however, only establishes knowledge of the transaction of loans, and does not show knowledge of a breach of fiduciary duty.  <u>See</u>  <u>Waller</u>, 32 F.3d at 1341.  Defendant presented no evidence that could establish that Ms. Leong was aware by any of the dates listed above that Defendant had failed to perform an adequate investigation of Best Rescue prior to investing in it.

Similarly, the fact that the MAF filed suit against Best Rescue to collect on the loans does not establish actual knowledge of a breach of fiduciary duty by Defendant.  Defendant, as the moving party, bears the burden of proving that there is no genuine issue of material fact as to Ms. Leong's actual knowledge.  Although the filing of the lawsuit may suggest that Alison Leong and the other trustees should have suspected that Defendant may have breached his fiduciary duties, Defendant failed to present any evidence establishing actual knowledge.  Indeed, it could very well be that Defendant had conducted due diligence, but ultimately, Best Rescue was not a good investment.

Accordingly, even assuming that the statute of limitations should run as of the date Ms. Leong became aware of the breach, rather than Mr. De Costa, Defendant has failed to establish when Ms. Leong had actual knowledge of the breach.  For these reasons, this Court DENIES Defendant's motion on this basis.

10

II.    ERISA Coverage

Defendant contends that the MAF trust is exempt from coverage under ERISA because most of the beneficiaries of the MAF trust are employed by the government and the government withholds contributions through payroll deductions.

> ERISA defines "welfare plan" as
>
> any plan, fund, or program which was . . . <u>established or maintained by</u> an employer or by an employee organization, or by both, . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits[.]

29 U.S.C. § 1002(1) (emphasis added).  The term "employee organization" means any labor union, which clearly includes the UPW.  29 U.S.C. § 1002(4). Governmental plans are not covered by ERISA. 29 U.S.C. § 1003(b)(1). Governmental plans are those plans "established or maintained for . . . employees . . . by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing."  29 U.S.C. § 1002(32).  ERISA attempts to "provide the widest possible protection to all such plans," and the

11

governmental plan exception to this broad coverage is a narrow one.  Silvera v.

Mutual Life Ins. Co. of N.Y., 884 F.2d 423, 425 (9th Cir. 1989).

In Silvera, the Ninth Circuit found that although the City hired a

private company to help administer a group benefits plan, the plan was a

governmental plan because the City endorsed the plan, automatically provided it to

all employees, paid the premiums itself directly to the insurer.  884 F.2d at 426.

Thus, "the City did in fact 'establish or maintain' an employee welfare benefit plan

and, since City is a political subdivision of a state, that plan qualified as a

governmental plan under 29 U.S.C. § 1002(32) and was therefore exempt from

ERISA coverage pursuant to 29 U.S.C. § 1003(b)(1)."  Id.

Here, however, unlike the Silvera case, there is no indication that any

government employer endorsed the plan, automatically provided it to all

employees, and paid the premiums itself directly to the insurer.  Instead, Plaintiffs

presented the Declaration of Trust, which shows that the MAF trust was

established by the UPW, an employee organization, not a political subdivision of

the State.  The Declaration of Trust also shows that the contributions are made by

the members of UPW, and that such contributions are voluntary contributions.

Defendant presented no evidence that the MAF trust was established or maintained

by the State of Hawaii, a political subdivision or an agency or instrumentality

12

thereof.  The only evidence presented by Defendant is that the employees who

participate in the MAF trust are employees both in the private and public sector

and that most of the beneficiaries are government employees.[2]  However, the mere

percentage of employees who are private sector versus public sector is insufficient

to establish as a matter of law that public employers established or maintained the

MAF trust, rather than or in conjunction with the UPW.

        Furthermore, Defendant's argument conflicts with the Ninth Circuit's

affirmance of his conviction for accepting kickbacks in connection with an

---

[2] Defendant cites to the deposition transcript of Dayton Nakanelua as support for this evidence.  Defendant, however,  attached the entire 67 page transcript and failed to cite or otherwise highlight the particular testimony that supports his proposition.  LR 56.1(c) states that "[d]ocuments referenced in the concise statement shall not be filed in their entirety.  Instead, the filing party shall extract and highlight only the relevant portions of each referenced document." Plaintiffs, in their opposition brief, state that for the sake of convenience public employees who participate in the MAF trust may have their contributions automatically deducted from their pay and be paid to UPW.  Plaintiffs, however, did not include this statement in their concise statement of facts or cite to any exhibit or declaration to support this allegation. This Court has no duty to comb through the numerous pages of exhibits attached to the instant motion, and attached Defendant's previous motion to find the evidentiary support for counsel's arguments.  In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers.  S. Cal. Gas, 336 F.3d at 889; Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.").  Furthermore, counsel's arguments in a brief are not evidence.  See Carrillo-Gonzalez v. I.N.S., 353 F.3d 1077, 1079 (9th Cir. 2003) (argument by counsel is not evidence).

employee welfare benefit plan.  In his appeal of his conviction, Defendant argued

that the life insurance plan (not the MAF trust at issue here, but a related plan

nevertheless) fell under the governmental plan exception to ERISA and that there

was insufficient evidence to justify the jury's verdict that the plan was not a

governmental one.  United States v. Rodrigues, 237 Fed. Appx. 178, 183,

Nos. 03-10549, 04-10027, 2007 WL 1675012 (9th Cir. June 11, 2007)

(unpublished).[3]  The Ninth Circuit disagreed.  Distinguishing the Silvera case, the

Ninth Circuit held that

> there was sufficient evidence to justify the jury's
> conclusion that the plan was established or maintained by
> the union, and not the government. Taking the evidence
> in the light most favorable to the prosecution, we note the
> following: the government had no role in negotiating the
> premiums or purchasing the plan; the government
> allowed its employees to purchase the plan as an
> alternative to other plans it offered, but did not endorse it
> over the others; the government only paid 2.5% of the
> premiums, with the remainder paid by the employees; the
> government sent its contribution and the employees

---

[3]Ninth Circuit Rule 36-3 provides that unpublished dispositions and orders "are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion."  The rule also provides that unpublished dispositions issued on or after January 1, 2007, may be cited to the courts of the Ninth Circuit in accordance with Fed. R. App. P. 32.1, which states that a party who cites an unpublished order that is not publically available in an electronic database must provide a copy of the order.  The case cited above was issued after January 2007 and is available in an electronic database.

> contribution to the union, who then sent it on to the
> insurance provider; the union maintained the payment
> and enrollment records; and the government only audited
> the records once in four decades. This meets our low
> threshold for sufficiency of the evidence challenges.

Id. Although this case is an unpublished decision, which pertains to the life

insurance plan and not the MAF trust at issue here, this Court cites to the criminal

case for analogy purposes because it involved the same Defendant, the same union,

the same affected employees, and the same argument made by Defendant.

Accordingly, Defendant has failed to establish as a matter of law that

the MAF trust is a governmental plan not covered by ERISA.  Therefore, his

summary judgment motion on this ground is DENIED.

III.    Fiduciary

Defendant claims that because he was not a trustee of the MAF trust

and there is no evidence showing that he was delegated the powers of the trustees

to invest the principal of the trust or make withdrawals from the trust, he cannot be

deemed to be a fiduciary.

> ERISA defines a fiduciary as any person who
>
> exercises any discretionary authority or discretionary
> control respecting management of such plan or exercises
> any authority or control respecting management or
> disposition of its assets, (ii) . . . renders investment
> advice for a fee or other compensation, direct or indirect,

> with respect to any moneys or other property of such
> plan, or has any authority or responsibility to do so, or
> (iii) . . . has any discretionary authority or discretionary
> responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). This is a functional test that turns on the activity, rather than the title, of the person in question. See CSA 401(K) Plan v. Pension Prof'ls, Inc., 195 F.3d 1135, 1138 (9th Cir. 1999) (actions and not title determine ERISA fiduciary status). This is because "ERISA defines fiduciary not in terms of formal trusteeship, but in functional terms of control and authority over the plan, thus expanding the universe of persons subject to fiduciary duties-and to damages-under § 409(a)." IT Corp. v. Gen. Am. Life Ins. Co., 107 F.3d 1415, 1419 (9th Cir. 1997) (citation and internal quotation marks omitted); see also Chao v. Graf, No. CV-N-01-0698, 2002 WL 1611122, at *8 (D. Nev. Feb. 1, 2002) ("Determinations of whether a party is a fiduciary focus on the party's functional control and authority over a plan rather than how their duties are formally characterized."). Furthermore, activities taken by a person may result in a finding that the person is a fiduciary, regardless of whether the activities were outside of the contracted duties of that person. CSA 401(K) Plan, 195 F.3d at 1138 ("A person's actions, not the official designation of his role, determines whether he enjoys fiduciary status, regardless of what his agreed-upon contractual

16

responsibilities may be." ) (citation and internal quotation marks omitted); see also McMorgan & Co. v. First Cal. Mortgage Co., 916 F. Supp. 966, 970 (N.D. Cal. 1995) (the actual "exercise of discretionary authority may confer fiduciary status, regardless of whether it was granted."). A person who exerts any control over the management or disposition of plan assets is a fiduciary. See IT Corp., 107 F.3d at 1421.

Here, although it may be true that Defendant was not specifically delegated certain authority, it is undisputed that Defendant was the primary contact for Mr. Hewitt, Defendant signed the security agreement for each loan made to Best Rescue, and Defendant presented the terms of the loans to the trustees of MAF only after at least the first two loans for a total of $450,000, if not three loans, had already been made. In addition, two trustees testified that the Board of Trustees generally followed Defendant's directions and recommendations, and relied on him to invest MAF trust monies. The trustees further stated that Defendant controlled and managed the MAF trust investments and did not ask for or obtain Board approval for specific investments and the Board did not vote on specific investments.

Focusing on Defendant's activities, and not on Defendant's title, this evidence is sufficient to create a genuine issue of material fact as to whether

17

Defendant actually exercised discretionary authority or control over the assets of

the MAF trust, and therefore, acted as a fiduciary in making the loans to Best

Rescue.  See Patelco Credit Union v. Sahni, 262 F.3d 897, 908-09 (9th Cir. 2001)

(undisputed evidence of defendant's control over plan assets, including moving

funds between accounts, is sufficient to establish that he is a fiduciary).  Thus,

Defendant's motion for summary judgment on this ground is DENIED.

IV.    Indispensable Parties

In one sentence, citing Rule 16 of the Federal Rules of Civil

Procedure, and without any analysis, Defendant asserts that the Complaint should

be dismissed because the MAF trustees who made the decisions to invest in Best

Rescue are indispensable parties.

This Court assumes that Defendant meant to cite to Federal Rule of

Civil Procedure 19, regarding joinder of persons.  That rule provides in part

> A person who is subject to service of process and whose
> joinder will not deprive the court of jurisdiction over the
> subject matter of the action shall be joined as a party in
> the action if (1) in the person's absence complete relief
> cannot be accorded among those already parties, or (2)
> the person claims an interest relating to the subject of the
> action and is so situated that the disposition of the action
> in the person's absence may (i) as a practical matter
> impair or impede the person's ability to protect that
> interest or (ii) leave any of the persons already parties
> subject to a substantial risk of incurring double, multiple,

18

or otherwise inconsistent obligations by reason of the
claimed interest.

Fed. R. Civ. P. 19(a).

As Defendant contributes only one sentence to this argument and cites
the wrong rule, Defendant has not established as a matter of law that the absence of
MAF trustees as defendants will result in the inability to grant complete relief, or
leave Defendant subject to a substantial risk of incurring double, or inconsistent
obligations.  Accordingly, Defendant's motion is DENIED.

CONCLUSION

For the reasons stated above, the Court DENIES Defendant's
Renewed Motion for Summary Judgment (Doc. # 91).

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 26, 2007.



_____
David Alan Ezra
United States District Judge

Steven De Costa, et al. vs. Gary W. Rodrigues, CV No. 03-00598 DAE-LEK;
ORDER DENYING DEFENDANT'S RENEWED MOTION FOR SUMMARY
JUDGMENT