IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | | |
|---|---|---|
| STEVEN DE COSTA, in his representative capacity as Chairperson of the Board of Trustees of United Public Workers, AFSCME Local 646, AFL-CIO, Mutual Aid Fund Trust, Real Party in Interest, United Public Workers, Local 646, AFL-CIO, | ) ) ) ) ) ) ) ) ) | CIVIL NO. 03-00598 DAE/LEK |
| | ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| GARY W. RODRIGUES, | ) ) | |
| Defendant. | ) ) ) | |

CIVIL NO. 03-00598 DAE/LEK

MEMORANDUM IN SUPPORT

## MEMORANDUM IN SUPPORT

### I.   FACTS OF THE CASE

The MAF Declaration of Trust provides that only trustees have the power to invest and disburse all money. Joint Exhibit 25, Declaration of 501(c)(9) Trust by UPW Local 646, AFSCME, AFL-CIO; ¶70 FF&CL. It is undisputed that Defendant was never a named trustee of the MAF, at any time pertinent hereto. ¶11, FF&CL. It also is undisputed that Defendant acted as an unpaid[1] agent of the MAF pursuant to an Administrative Services Agreement between the United

---

[1]   See, Plaintiff's Exhibit 44, at p. 111, lns. 17-23.

Public Workers, Local 946, AFSCME, AFL-CIO (hereinafter "UPW") and the

MAF.  Joint Exhibit 27, Administrative Services Agreement; Joint Exhibit 24,

Agenda, Mutual Aid Fund Trustees Meeting, Friday, October 19, 1984; Joint

Exhibit 30, Minutes, UPW State Executive Board Meeting, Saturday, October 20,

1984, at page 3, subsections a.(4).

    The Administrative Services Agreement, in relevant part, expressly provides

the following:

    Section 2 - Administrator
        The United Public Workers, through its State Director[2]
    acting on its behalf, shall provide the following services:
        a.    Receive, collect, hold, **invest and disburse all
    money payable to or by the Fund**.
            [....]

    Section 4 Other Costs
        Costs related to the following shall be billed to the Fund
    as they occur:
        a.    Compliance with the Employee Retirement
    Security Act of 1974.
            [....]

Joint Exhibit 27 (Emphasis added); But see, 29 CFR §2509.75-8.[3]

---

[2]    See ¶10, FF&CL, finding that Defendant served as the State Director of the UPW
from 1981 until November 2002.

[3]    29 CFR §2509.75-8, Questions and answers relating to fiduciary responsibility
under the Employee Retirement Income Security Act of 1974, provides the following:
    Q.    May a named fiduciary delegate responsibility for management and control
        of plan assets to anyone other than a person who is an investment manager
        as defined in section 3(38) of the Act so as to be relieved of liability for

In 1994 the MAF trustees hired Albert Hewitt as their investment advisor and authorized a minimum investment of $500,000 to be processed through Hewitt's company. Joint Exhibit 32; ¶14 FF&CL. Hewitt was a qualified investment advisor when he was recommended and hired in 1994 and made good investments for the MAF trust. There was no reason to believe in 1998 when he recommended investment in Best Rescue, that Hewitt would recommend an imprudent investment. ¶96 FF&CL.

In 1998, Hewitt recommended that the MAF invest in Best Rescue Systems, Inc. ¶16, FF&CL. With the approval of the Chairman of the MAF Board (¶¶18, 19 FF&CL; Section 11, Joint Exhibit 25), an initial investment/loan of $250,000 was made in/to Best Rescue Systems, Inc. through Hewitt ( ¶27, FF&CL).

The MAF subsequently made five additional investments/loans to Best Rescue (i.e., $200,000 on February 5, 1999; $150,000 on April 26, 1999;

---

the acts and omissions of the person to whom such responsibility is delegated:

A.    No. Section 405(c)(1) does not allow named fiduciaries to delegate to others authority or discretion to manage or control plan assets. However, under the terms section 403(a)(2) and 402(c)(3) of the Act, such authority and discretion may be delegated to persons who are investment managers as defined in section 3(38) of the Act. Further, under section 402(c)(2) of the Act, if the plan so provides, a named fiduciary may employ other persons to render advice to the named fiduciary to assist the named fiduciary in carrying out his investment responsibilities under the plan.

3

$250,000 on June 30, 1999; $150,000 on August 24, 1999; $100,000 on

November 22, 1999) amounting to a total of $850,000. ¶¶29, 33, 36, 37, 39,

FF&CL. The signatures of the MAF Board Chairman and Secretary were required

for the MAF checks covering these investments, and there was no evidence

showing that Defendant ever executed any of the checks issued for the MAF's

investments in Best Rescue. §28, FF&CL.

Except for the initial investment/loan of $250,000 made in/to Best Rescue,

it has been determined that Defendant is personally liable to the MAF for the five

subsequent loans made to Best Rescue amounting to a total of $850,000. ¶124,

FF&CL.

II.    ARGUMENT

For the reasons set forth below, Defendant submits that the Court's Findings

of Fact and Conclusions of Law filed on March 20, 2008, contain manifest errors

of law, and the evidence adduced at trial is not sufficient to determine the amount

of damages, if any, to which Plaintiff is entitled.

    A.    The Evidence at Trial is Insufficient to Determine
        the Amount of Damages to which Plaintiff is Entitled

Except for the initial investment/loan of $250,000 made in/to Best

Rescue, it has been determined that Defendant is personally liable to the MAF for

4

the five subsequent loans made to Best Rescue amounting to a total of $850,000

(i.e., $200,000 on February 5, 1999; $150,000 on April 26, 1999; $250,000 on

June 30, 1999; $150,000 on August 24, 1999; $100,000 on November 22, 1999)

amounting to a total of $850,000. ¶¶29, 33, 36, 37, 39, 124, 126 FF&CL.

Defendant's liability is based on Defendant's failure to "question

Hewitt about the absence of long-term financing and repayment of half of the

principal of the first loan." ¶99, FF&CL.

The undisputed evidence at trial, however, showed that Best Rescue

had been making interest payments to MAF pursuant to the terms of their

agreements up to September 10, 1999 which amounted to a total of $54,000.00[4].

---

[4]      Evidence at trial shows that Best Rescue issued the following checks to MAF:

| Date | Num. | Name | Amount |
|------|------|------|--------|
| 1/6/1999 | 1031 | UPW Mutual Aid Fund | -3,750.00 |
| [.....] | | | |
| 1/26/1999 | 1044 | UPW Mutual Aid Fund | -3,750.00 |
| [.....] | | | |
| 2/24/1999 | [illegble] | UPW Mutual Aid Fund | -3,750.00 |
| [.....] | | | |
| 3/4/1999 | 1093 | UPW Mutual Aid Fund | -3,000.00 |
| [.....] | | | |
| 3/24/1999 | 1131 | UPW Mutual Aid Fund | -3,750.00 |
| [.....] | | | |
| 4/4/1999 | 1152 | UPW Mutual Aid Fund | -3,000.00 |
| [.....] | | | |
| 4/24/1999 | 1241 | UPW Mutual Aid Fund | -3,750.00 |
| [.....] | | | |
| 5/4/1999 | 1242 | UPW Mutual Aid Fund | -3,000.00 |
| [.....] | | | |

See Joint Exhibits 12 and 16.

In addition, in his letter of September 10, 1999, Hewitt informed

Defendant that with a fifth loan from MAF of $150,000, capitalization of Best

Rescue was expected to be complete in the first week of October, 1999, and all of

MAF's investments would be converted into stock in the company. He also

reported that he had delayed completion of the Company's business plan until it

was ready to ship products at the end of September, 1999. Joint Exhibit 12[5].

| | | | |
|---|---|---|---|
| 5/24/1999 | 1280 | UPW Mutual Aid Fund | -3,750.00 |
| [.....] | | | |
| 5/28/1999 | [illegible] | UPW Mutual Aid Fund | -3,750.00 |
| [.....] | | | |
| 6/4/1999 | 1291 | UPW Mutual Aid Fund | -3,000.00 |
| [.....] | | | |
| 6/24/1999 | 1382 | UPW Mutual Aid Fund | -3,750.00 |
| 6/25/1999 | 1381 | UPW Mutual Aid Fund | -2,250.00 |
| [.....] | | | |
| 7/4/1999 | 1383 | UPW Mutual Aid Fund | -3,000.00 |
| [.....] | | | |
| 9/8/1999 | [illegible] | UPW Mutual Aid Fund | -3,750.00 |
| 9/8/1999 | 1500 | UPW Mutual Aid Fund | -3,750.00 |
| 9/6/1999 | 1501 | UPW Mutual Aid Fund | -3,000.00 |
| 9/6/1999 | 1502 | UPW Mutual Aid Fund | -3,000.00 |
| 9/8/1999 | 1503 | UPW Mutual Aid Fund | -2,250.00 |
| 9/8/1999 | 1504 | UPW Mutual Aid Fund | -2,250.00 |
| 9/8/1999 | 1506 | UPW Mutual Aid Fund | -3,750.00 |
| 9/8/1999 | 1508 | UPW Mutual Aid Fund | -3,750.00 |

See, Joint Exhibit 16

[5]    Hewitt also reported as follows:

Events are going well for the Company and all of the Company's products are
being well received in the fire community. In fact, the products were the hit of
recent Fire Chief trade shows in Kansas City and Sao Paulo, Brazil. The

At trial there was no competent evidence showing if or when Best Rescue went into default on any of the MAF investments. There was also no expert testimony showing that, under the circumstances, any of the investments in Best Rescue would be considered imprudent at the time they were made. <u>Liss v. Smith</u>, 991 F.Supp. 278, 301 (S.D.N.Y. 1998)(holding that determinations as to whether the diversification requirement was breached and whether defendants have met their burden of establishing prudence usually requires factual findings made on the basis of expert testimony.).

Having determined that "[t]here was no reason to believe in 1998, when he recommended investment in Best Rescue, that he would recommend an imprudent investment"(¶96, FF&CL), and there being no competent evidence adduced at trial regarding the applicable standard of care at the point that each investment was made and/or when Defendant's reliance on Hewitt's qualifications and/or representations became unreasonable, the Court should conclude that the evidence is insufficient to determine what amount of damages, if any, Plaintiff is

---

Company has a long list of distributors to choose from and indications of actual product orders are either in hand or developing. It is estimated that the Company will have sales of $600,000 to $750,000 (300 units or more) from October 1 to December 31, 1999 (this year) and $7,500,000 to $10,000,000 (3,000 units or more) next year.

Joint Exhibit 12.

entitled to recover from this Defendant.

B.    The Court Erred in Failing to Determine that Defendant
is Entitled to Indemnification from his Principal/s

Defendant submits that the Court erred as a matter of law in failing to

determine that Defendant is entitled to indemnification from his principal/s in this

action.

1.    Applicable Law

Restatement of Agency, 2d, in relevant part, provides the

following:

§438.  Duty to Indemnity; the Principle

(1)    A principal is under a duty to indemnify the agent in
accordance with the terms of the agreement with him.
(2)    In the absence of terms to the contrary in the agreement
of employment, the principal has a duty to indemnify the agent where
the agent
(a)    makes a payment authorized or made necessary in
executing the principal's affairs or, unless he is officious, one
beneficial to the principal, or
(b)    suffers a loss which, because of their relation, it is
fair that the principal should bear.

[....]

§439. When Duty to Indemnify Exists

Unless otherwise agreed, a principal is subject to a duty to
exonerate an agent who is not barred by the illegality of his conduct
to indemnify him for:

8

[....]
(c)    payments of damages to third persons which he is
required to make on account of the authorized performance of an act
which constitutes a tort or a breach of contract;
(d)    expenses of defending actions by third persons brought
because of the agent's authorized conduct, such actions being
unfounded but not brought in bad faith;
(e)    payments resulting in benefit to the principal, made by
the agent under such circumstances that it would be inequitable for
indemnity not to be made.

[....]

§43.  Acquiescence by Principal in Agent's Conduct

(1)    Acquiescence by the principal in conduct of an agent
whose previously conferred authorization reasonably might include it,
indicates that the conduct was authorized; if clearly not included in
the authorization, acquiescence it is indicates affirmance.
(2)    Acquiescence by the principal in a series of acts by the
agent indicates authorization to perform similar acts in the future.

Restatement of Agency, 2d (1958).

29 U.S.C. §1132(a)(3) expressly provides a fiduciary with

equitable remedies for redressing violations of ERISA.[6]  Because indemnity is

---

[6]    29 U.S.C. §1132(a)(3) provides:

(a)    Persons empowered to bring a civil action.  A civil action may be brought
-
[.....]

(3)    by a participant, beneficiary, or fiduciary (A) to enjoin any act or
practice which violates any provision of this title or the terms of
the plan, or (B) to obtain other appropriate equitable relief (I) to
redress such violations or (ii) to enforce any provisions of this title

9

considered a traditional equitable remedy in common law, a fiduciary is entitled to seek indemnity from another fiduciary or non-fiduciary for violations of ERISA's provisions. <u>Youngberg v. Bekins Co.</u>, 930 F.Supp. 1396 (E.D.Cal. 1996)(noting that although the Ninth Circuit has rejected an ERISA based right to contribution under 29 U.S.C. §1132(a)(2), the Supreme Court's decision in <u>Varity Corp. V. Howe</u>, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) held that 29 U.S.C. §1132(a)(3) does not limit the kind of relief available for breaches of fiduciary duties); see also, <u>HSBC Bank USA v. Bond</u>, 838 N.Y.S.2d 419 (2007)( holding that pursuant to the Supreme Court's decision in <u>Harris Trust & Savings Bank v. Salomon Smith Barney Inc.</u>, 530 U.S. 238, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000) a non-fiduciary may be held liable for "appropriate equitable relief" under 29 U.S.C. §1132(a)(3)).

        2.    <u>Defendant is Entitled to Indemnification From His Principal/s</u>[7]

Defendant is entitled to indemnification for any amount he is required to pay because his purported liability in this case arises entirely from acts and/or omissions committed within the scope of his duties as the State Director of the UPW and Administrator of the MAF in accordance with the terms of the

---

or the terms of the plan;

[7]      For the purposes of this motion Defendant submits that the MAF and/or the UPW was/were his principal/s in this matter.

10

Administrative Services Agreement between the MAF and the UPW.

The Administrative Services Agreement expressly **requires**
**"[t]he United Public Workers, through its State Director acting on its behalf"**
**to "invest and disburse all money payable to or by the Fund," and requires**
**the MAF to cover the costs of "[c]ompliance with the Employee Income**
**Security Act of 1974."** Joint Exhibit 27 ; see also, ¶70, FF&CL. Since
Defendant's liability arises from investments of MAF money, which Defendant
was expressly authorized and/or required to do under the terms of the
Administrative Services Agreement between the MAF and the UPW, it is only fair
that Defendant's principal/s bear this loss because[8]: (1) Defendant was an unpaid
agent of the MAF at all times pertinent hereto; (2) ERISA does not permit MAF's
trustees[9] to delegate their fiduciary authority and discretion to manage or control
plan assets to Defendant ( See, 29 CFR §2509.75-8, note __, supra); (3) MAF
trustees blindly relied on Defendant to invest its monies (§76, FF&CL) in breach
of their fiduciary obligations under 29 U.S.C. §1104(a) (¶¶90-95, FF&CL); (4)
Audit reports regularly presented to the MAF Trustees described all of the
investments upon which Defendant's liability is based (Joint Exhibits 18 & 20);

---

[8]     See Affidavit of Eric A. Seitz attached hereto.

[9]     See 29 U.S.C. §1102(a).

11

(5) MAF trustees had opportunity to question Defendant regarding his investment recommendations, but "approved whatever Defendant presented because they believed that he had the UPW members' best interest at heart (¶32 FF&CL), and; (6) there was no evidence that Defendant received any personal gain from the investments or had any conflict of interest in the transactions, inter alia.

    C.    Defendant is Entitled to a Deduction of the Full Amount of the $200,000 Recovery From Albert Hewitt's Insurer

Any asserted liability of in this action should be reduced by the full amount of Plaintiff's prior recovery from Albert Hewitt's Insurer, i.e., $200,000.00.

Under the law of damages, a plaintiff has a duty to avoid damages, and a defendant has a right to a reduction in damages upon a showing of the following circumstances:

    (1)    that the plaintiff really has no legally supportable claim or cause of action;
    (2)    that the claimed damages are not as large as the plaintiff asserts; and
    (3)    that the plaintiff could have avoided reasonably all or part of the claimed damages.

22 Am.Jur.2d, §335 (2003 ed.).

In the instant case, not only are the claimed damages not as large as

12

Plaintiff asserts,[10] the plaintiff had an opportunity to recover all or part of the claimed damages from Al Hewitt, the party primarily responsible for the failed investments in Best Rescue.

At trial evidence was adduced showing that civil litigation was initiated against Al Hewitt to recover the MAF's losses from the investments in Best Rescue, and that the action was settled for a payment of $200,000. Joint Exhibit 42. However, there was no competent evidence showing if, when, and/or under what circumstances the MAF ever approved the settlement as reasonable. Mr. Nakanelua's bald conclusory claims that it was approved, without any corroborating evidence of that fact or of the reasonableness of the settlement under the circumstances, is simply insufficient as a matter of law to prove otherwise. This is particularly so where it is undisputed that Defendant and the trustees who testified at trial were never consulted and/or provided with any information regarding the reasonableness of the settlement. Moreover, there was no evidence of any judicial determination that the settlement was reasonable and/or that the matter was ever reviewed by any Court prior to its implementation.

Accordingly the Court should determine that Plaintiff has failed to

---

[10]    For the purposes of this discussion, Defendant incorporates all of the arguments contained Subsection II.B.2., Id.

13

meet its burden of proof that it fulfilled its duty to mitigate its damages arising from the investments in Best Rescue, and the Court should reduce the Defendant's purported liability by the full amount of the $200,000.00 recovery.

III.    CONCLUSION

For all of the reasons set forth above this Court should reconsider its Findings of Facts and Conclusions of Law entered March 20, 2008 and determine that Defendant is entitled to indemnification from his principal/s and/or order a new trial on the grounds that the evidence adduced at trial is not sufficient to determine the amount of damages, if any, to which Plaintiff is entitled.

DATED:    Honolulu, Hawaii,   March 31, 2008          .


/s/ Eric A. Seitz
ERIC A. SEITZ
LAWRENCE I. KAWASAKI

Attorneys for Defendant
Gary W. Rodrigues

14