KOSHIBA AGENA & KUBOTA

JAMES E. T. KOSHIBA     768-0
CHARLES A. PRICE       5098-0
2600 Pauahi Tower
1001 Bishop Street
Honolulu, Hawaii 96813
Telephone No.: 523-3900
Facsimile No.: 526-9829
email: jkoshiba@koshibalaw.com
       cprice@koshibalaw.com

Attorneys for Plaintiffs

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

APR 11 2008

at 4 o'clock and 11 min. P M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STEVEN DE COSTA, IN HIS REPRESENTATIVE CAPACITY AS CHAIRPERSON OF THE BOARD OF TRUSTEES OF UNITED PUBLIC WORKERS, AFSCME, LOCAL 646, AFL-CIO, MUTUAL AID FUND TRUST, REAL PARTY IN INTEREST UNITED PUBLIC WORKERS UNION, AFSCME, LOCAL 646, AFL-CIO, <br><br> Plaintiffs, <br><br> vs. <br><br> GARY W. RODRIGUES, <br><br> Defendant. | CIVIL NO. CV03-00598 DAE LEK <br><br> PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF FINDINGS OF FACT AND CONCLUSIONS OF LAW FILED MARCH 20, 2008, AND FOR NEW TRIAL, FILED MARCH 31, 2008; CERTIFICATE OF SERVICE <br><br> Non-Hearing Motion <br><br> Trial Dates: <br> Feb. 29, March 6 and 7, 2008 |

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION FOR RECONSIDERATION OF FINDINGS OF FACT AND
CONCLUSIONS OF LAW  FILED MARCH 20, 2008, AND FOR NEW TRIAL,
FILED MARCH 31, 2008

*Introduction*

Plaintiffs Steven De Costa, in his representative capacity as Chairperson

of the Board of Trustees of United Public Workers, AFSCME, Local 646, AFL-CIO,

Mutual Aid Fund Trust, Real Party in Interest United Public Workers, AFSCME,

Local 646, AFL-CIO ("Mutual Aid Fund" or "MAF") respectfully request that

Defendant Gary W. Rodrigues' ("Rodrigues") Motion for Reconsideration of

Findings of Fact and Conclusions of Law filed March 20, 2008, and for New Trial,

filed on March 31, 2008, be denied for the following reasons:

1.      The Motion does not satisfy the standard for a motion for
reconsideration or new trial.

2.      The evidence supported the $850,000 damage award.

3.      Rodrigues is not entitled to indemnification.

4.      Rodrigues is not entitled to a $200,000 credit.

Each of these arguments is addressed briefly below.

*Argument*

1.      *Standard of Review for Reconsideration Motions*

There are three grounds for reconsideration of interlocutory orders:

(a)    Discovery of new material facts not previously available;

(b)    Intervening change in law;

(c)    Manifest error of law or fact.

Local Rule 60.1 for the United States District Court of Hawaii.

A motion for reconsideration must accomplish two goals. "First, a motion for reconsideration must demonstrate some reason why the Court should reconsider its prior decision. Second, the motion must set forth facts or law of a 'strongly convincing' nature to induce the court to reverse its prior decision." Jacob v. U.S., 128 F. Supp. 2d 638, 641 (D. Haw. 2000). Mere disagreement with a court's analysis in a previous order is not a sufficient basis for reconsideration. White v. Sabatino, 424 F. Supp. 2d 1271, 1274 (D. Haw. 2006) (citing Leong v. Hilton Hotels Corp., 689 F. Supp 1572 (D. Haw. 1988). "Whether or not to grant reconsideration is committed to the sound discretion of the court." Navajo Nation v. Confederated Tribes and Bands of the Yakama Indian Nation, 331 F.3d 1041, 1046 (9th Cir. 2003).

Similarly, in order to grant a new trial in a non-jury case, "substantial reasons" must support a manifest error of law or mistake of fact. See, e.g. Ball v. Interoceanic Corp., 71 F.3d 73, 76 (2nd Cir. 1995).[1]

---

[1]Rodrigues' Motion also generically cites to FRCP Rule 60, but no specific 60(b) subsection is cited or relied upon. Generally, 60(b)(6)'s "catch-all" provision requires "extraordinary circumstances," in order to obtain relief from a final judgment or order. See generally, 12 Moores Federal Practice 3rd ed. §60.48[3][a] (2007).

In the present case, Rodrigues has not established a basis for reconsideration or new trial. Rodrigues rehashes the same arguments previously made at trial. Rodrigues' mere disagreement with the Court's Findings and Conclusions and his belief that the Court committed manifest errors of law, without more, do not constitute valid reasons for the Court to reconsider its Findings and Conclusions, nor are the facts or arguments set forth by Rodrigues of a "strongly convincing," "Substantial," or "extraordinary" nature so as to induce the Court to reconsider its prior decision.

2.    *The Evidence Supports the $850,000 Damage Award.*

Rodrigues essentially argues that he should not be liable because he was not a Trustee, he was merely acting in an agency/ministerial capacity, and he reasonably relied upon the investment advice of the MAF investment advisor, Albert Hewitt ("Hewitt").[2]  For the reasons discussed below, Rodrigues' argument is inconsistent with the evidence.

Although he did not have the title of Trustee, the evidence supports that Rodrigues acted as the *de facto* Board of Trustees, exercising substantial discretion, authority, and control in connection with the Best Rescue loans. Hewitt always and

---

[2]MAF disputes Rodrigues' contention that he was an "unpaid" Administrator. First, the "evidence" cited by Rodrigues in footnote 1 of his memorandum, Ex. 44, was not admitted into evidence. Second, Rodrigues was paid as a State Director whose duties include serving as MAF Plan Administrator, and the MAF paid $2,000/month for services provided the UPW State Director and other UPW staff to MAF.

only dealt with Rodrigues in connection with the Best Rescue loans and thought Rodrigues was the MAF's authorized representative. Ex. 43, pp. 15, 17. Hewitt never met the MAF Trustees, made any presentations to the MAF Board, or provided written reports. Ex. 43, pp. 68, 69. During the time of the Best Rescue loans, Hewitt reported Best Rescue's status to Rodrigues on a monthly basis. Ex. 43, p. 38. Only Rodrigues, not the Trustees, accepted and received the Promissory Notes, Security Agreement, and correspondence regarding the loans. Exs. 2 - 14. Only Rodrigues, not the Trustees, was aware of and involved in the specific amounts of the Notes, the interest rates, and the due dates. Only Rodrigues knew that the loan documentation was prepared by Best Rescue's lawyer, and not prepared or reviewed by a lawyer on behalf of the MAF.

The Trustees had very limited information about Best Rescue. Rodrigues admitted that he himself did not do any due diligence regarding the loans but he did not tell that to the Trustees, despite that they knowingly relied upon him and followed his directions and recommendations. Rodrigues first told the Trustees about Best Rescue in February 1999. Ex. 17. There were no Trustee meetings at all in 1998, the last previous meeting being June 1997. Ex. 17. Per the testimony of Alison Leong, George Yasumoto, and Dayton Nakanelua, Trustee approval was not sought or obtained regarding Best Rescue, and no loan terms or total investment amounts were discussed, and there was no motion or vote by the Trustees on the

loans. Exs. 17, 33. By the time Rodrigues first mentioned Best Rescue to the Trustees in February 1999, he had already agreed to loan and had the MAF pay $450,000 to Best Rescue and signed the November 1998 Security Agreement. Exs. 17, 2 - 6.

At the next MAF Trustees' meeting, on June 19, 1999, the 1998 audited Financial Statements were provided to the Trustees when they arrived at the meeting, which statements noted on page 6 that a total of $600,000 had been loaned to Best Rescue as of March 30, 1998. Ex. 18, p. 6, Note 2. There was no meaningful disclosure, discussion, motion, vote or formal approval by the Trustees on the Best Rescue loans, and the June 19, 1999 meeting lasted only three minutes total. Ex. 33.

In December 1999, Rodrigues, not the Trustees, made the decision to call the loans and demand repayment. Ex. 15. Rodrigues did so because AFSCME's auditor discovered that the Best Rescue investment loans were in default. Ex. 35. Rodrigues did not seek Trustee approval when calling the loans or later when firing Hewitt as the investment advisor.

In early 2000, Rodrigues replaced Hewitt with First Hawaiian Bank ("FHB") as the new investment advisor. FHB presented an Investment Policy Statement, the first ever for the MAF, and Rodrigues signed the FHB Agency Agreement, Fee Schedule, and Investment Policy Statement on behalf of the MAF in March 2000. Ex. 19. Rodrigues subsequently presented these documents that he

had already signed to the MAF Trustees at their April 1, 2000 meeting. Ex. 19.

These above facts more than sufficiently support that Rodrigues exercised discretion and authority over the MAF assets generally and the Best Rescue loans specifically and, therefore, acted as a fiduciary under ERISA. Rodrigues' role was not merely an agency/ministerial one. In fact, Rodrigues exercised the full power and authority of the Board. He was the de facto Board, and the Trustees' roles had been reduced to merely ministerial figure heads.

Rodrigues testified at trial that he sought the approval of the MAF Board Chairman prior to making the first loan. Yet, in April 2000, when responding to the AFSCME audit critical of the Best Rescue loans, Rodrigues wrote: "The investments were made by the investment advisor as a normal function and therefore the Trustees did not review nor are they required to review each investment prior to the investment advisor's decision as clearly stated in the MAF Trust documents." Ex. 37, p. 22, ¶ 1. c. Rodrigues did not say then in April 2000, or when deposed in July 2003, that the Board Chairman, who has since passed away, approved the first loan.

Rodrigues also testified that he did not sign any Best Rescue loan checks, but there was no evidence of actual loan checks. Hewitt's November 12, 1998 letter to Rodrigues suggests that loan monies were *wired* to the special Best Rescue account established and controlled by Hewitt. Ex. 1, penultimate sentence

("I will call you after you receive the promissory note and wiring instructions."). There was no evidence regarding whether MAF Trustees or UPW officers were involved in or needed to sign any wiring instructions. Regardless, the testimony of George Yasumoto supported that stacks of UPW and MAF checks generally were automatically signed as a matter of rote by the UPW President and Secretary-Treasurer once a week after their workday.

The Best Rescue loans were unquestionably imprudent, and no expert testimony is needed to assist the decision maker in this regard. Moreover, Rodrigues himself agreed, when signing the FHB Investment Policy in April 2000, as to appropriate standards and criteria for MAF investments. Those investment standards precluded this type of investment.

Rodrigues' claim that he satisfied any fiduciary duties by reasonably relying on Hewitt's advice fails primarily for three reasons.

First, Rodrigues knew or should have known that the Best Rescue loans were inappropriate for an ERISA-governed plan. Hewitt and Rodrigues had initially thought of investing monies from a separate UPW Pension Fund. Ex. 43, p. 22, Ex. 1. Hewitt specifically advised Rodrigues that the initial idea of investing UPW Pension monies was unworkable due to legal constraints. Ex. 1. Those legal constraints were that the UPW Pension fund was governed by ERISA. Ex. 43, pp. 21-22. Because the UPW Pension fund was an ERISA plan, no UPW Pension

monies were invested. Hewitt testified that Rodrigues did not tell him that MAF was an ERISA plan, and if he had known, he would not have had MAF loan monies to Best Rescue. Ex. 43, pp. 13, 64-65. Rodrigues admitted that he did not tell Hewitt that the MAF was an ERISA plan. He testified at trial that he did not do so because he did not believe or understand that the MAF was an ERISA plan. This testimony was not credible. Rodrigues did know that MAF was an ERISA plan. On cross examination, Rodrigues was impeached by his prior deposition testimony that the MAF "is an ERISA plan." Ex. 44, p. 111. Rodrigues knew from numerous MAF records that he reviewed that the MAF was always described as an ERISA plan. Exs. 26, 27, also MAF Annual Financial Statements, e.g., at Exs. 20, 21. AFSCME's lawyer specifically advised Rodrigues, in response to Rodrigues' inquiry, that MAF investments must be consistent with the requirements of ERISA. Ex. 31. By failing to tell Hewitt that the MAF was an ERISA plan, while knowing (1) that the MAF was an ERISA plan and (2) that the UPW Pension monies were not being invested in Best Rescue due to legal constraints, Rodrigues caused imprudent loans to be made that would not have otherwise been made. At the very least, Rodrigues should have questioned why MAF monies could be invested in Best Rescue but UPW Pension fund monies could not, and his reliance on Hewitt was unreasonable under the circumstances from the very beginning.

Second, Rodrigues knew that Best Rescue was a start up company

developing a new product, that Hewitt had close ties to Best Rescue, and that Hewitt had the unique position of being able to control the Best Rescue account and how the loan monies were spent. At the time the loans were made, Best Rescue did not have a completed business plan, marketing plan, shareholder agreement, engineering certification, fire organization seal of approval, patent, product videos, or distributorship group agreements. Ex. 43, pp. 19-20, 41, 42, 49, 55-56, Ex. 1, p. 2 (" ... Business Plan is currently being completed ..."), and Ex. 12. As a start up, Best Rescue did not have any income; it only had one product order, received in the summer of 1999, for $30,000. Ex. 43, p. 44. The MAF loans were used for continued development of the Best Rescue product. Ex. 43, p. 34.

Rodrigues knew of Hewitt's financial ties to Best Rescue. Ex. 43, pp. 27-29. Rodrigues knew that Hewitt controlled the Best Rescue account. Ex. 1. Rodrigues denies that Hewitt informed him of all of Hewitt's ties or that Hewitt was receiving money out of the loans, but the fact that Hewitt fully disclosed his Best Rescue relationship and ties to strangers at AFSCME in December 1999, Ex. 35, after Best Rescue defaulted and the investment looked bleak, supports that Hewitt would have told the same facts to Rodrigues, whom he had worked with for many years, when the outlook for Best Rescue was rosy and optimistic. Given Hewitt's ties and the start up nature of the company that was developing a new product and had no income, Rodrigues' reliance on Hewitt's tainted/conflicted advice was

-10-

unreasonable and imprudent even before the first loan was made, and certainly after his ties came to light thereafter.

Third, even if the facts and arguments above are ignored, Rodrigues knew that the initial loan monies were to be used to develop the Best Rescue product and that the loans were to be repaid, in part, from funding or capitalization from another source in early 1999. Ex. 43, p. 46, Ex. 1. That funding never was obtained, yet Rodrigues loaned additional MAF monies thereafter. Certainly after the first short term loan was not repaid, in part, as planned in January 1999, more than sufficient red flags were raised to cause Rodrigues to question the investment before loaning additional monies to the start up company with no business plan after January 1999.[3]

The first November 1998 $250,000 loan was condition upon and made with the understanding that it was short-term interim financing and that the MAF would be repaid by long-term financing from other investors in January 1999, and those long-term investors were anticipated to be other Hawaii corporations (DTRIC and Royal State Group) known by Rodrigues. Exs. 1-3, Ex. 43, p. 22-23. Rodrigues told AFSCME in April 2000 that he made the loan in part because he anticipated that

---

[3]Rodrigues' reliance on Best Rescue's monthly interest payments is not a reasonable basis for loaning more money. Of course Best Rescue could pay interest; the MAF was continually paying it hundreds of thousands of dollars every few months. This was no indication that the start up was making money or receiving capital from others. Rodrigues knew it was still developing the product and others did not invest.

"other local corporations would share in the investment with MAF." Ex. 37, p. 5, ¶ 1. a. Rodrigues knew after January 1, 1999, the due date for the first loan, and after half of the first loan was not repaid as planned, that the other local corporations would not be investing in Best Rescue, and Rodrigues, who sat on Royal State's Board of Directors, could have easily have picked up the phone to call someone at those local corporations to confirm if they were in fact investing. The second Note, dated February 5, 1999, and all subsequent Notes, deleted the language appearing in the first Note stating that the loan was interim financing that would be repaid from expected long-term financing from other investors. Exs. 4, 6, 8, 10, and 13. Indeed, the September 1999 letter from Hewitt to Rodrigues further evidences that the initial repayment plan had been abandoned and there no longer were any "other" investors to repay MAF in the short term. Ex. 12. As the loan amounts grew, it also was, or should have been, readily apparent that ERISA's statutorily required diversification was not satisfied. Thus, for the reasons articulated in the Findings and Conclusions, the evidence supports Rodrigues being liable as a fiduciary for the $850,000 in lost loan monies.

3.    *Rodrigues Is Not Entitled to Indemnification.*

Rodrigues' indemnity argument is perplexing and should again be rejected by the Court for the reasons outlined below.

First, procedurally, indemnity is an affirmative claim, not a defense.

Rodrigues has not filed an indemnity claim against anyone in this action. There is no pending indemnity claim for the Court to decide.

Second, a party that is entitled to indemnity from a third party is not excused or exonerated from paying assessed damages in favor of the first party. An agent and principal can both be jointly liable to the wronged third-party. Again, any "right" of indemnity does not exonerate or exculpate Rodrigues' liability to Plaintiffs, the first party.

Third, Rodrigues' indemnity analysis assumes that he was a passive "agent" acting on behalf of the MAF Board. Rather, the evidence supports that Rodrigues was an active pseudo-Trustee or principal, not a mere agent, acting on his own direction, accord, discretion and authority, and without direction or authority from the Board. §438(2)(b) of the Restatement of Agency, 2d, specifically says that the principal is to indemnify when the agent "suffers a loss which, because of their relation, it is fair that the principal should bear." Here, under the circumstances described above, it is not fair for the other Trustees to have to indemnify Rodrigues for the MAF losses he caused. Similarly, the ERISA indemnity case cited by Rodrigues presumes that the fiduciary seeking indemnity has "clean hands" and is blameless, and Rodrigues is not. Also, §43 of the Restatement of Agency regarding acquiescence presumes that the principal knew all the facts. Here, the MAF Trustees

were kept in the dark and did not meaningfully acquiesce.[4]

Fourth, the better rule is that indemnity is an extreme form of contribution which is not allowed under ERISA, and a fiduciary is not entitled to indemnity from other co-fiduciaries. Melio v. American Med. Servs., 35 F. Supp. 2d 761 (S.D. Cal 1999).

4.    *Rodrigues Is Not Rntitled to a $200,000 Credit.*

Rodrigues has the burden of proving his affirmative defense of failure to mitigate damages. The MAF does not bear this burden. Rodrigues offered absolutely no facts or evidence, just pure argument, to prove that the Hewitt insurance settlement was unreasonable. Rodrigues has failed to meet his burden. For the reasons articulated in the Findings and Conclusions, the settlement was reasonable.

The MAF lost $1.1 million plus interest. The $200,000 from Hewitt's insurer should be credited against the $1.1 million loss, not against Rodrigues' $850,000 portion of that loss for which he is jointly liable. Rodrigues' argument for a credit assumes that a jointly liable fiduciary has a right of contribution from other jointly liable co-fiduciaries. Under ERISA, it is clear that there is no right of contribution between co-fiduciaries. Kim v. Fujikawa, 871 F.2d 1427 (9th Cir.).

---

[4]Mr. Seitz's Affidavit is inadmissible hearsay. Also, Mr. Nakanelua specifically testified that he believed he owed fiduciary duties when serving as Plan Administrator.

Allowing Rodrigues to receive a $200,000 credit would be a windfall to him. Assuming Rodrigues pays his full $850,000 liability, the MAF will not receive a windfall and will not be overcompensated. This is not a situation where the total joint loss was only $850,000. The loss was unquestionably $1.1 million plus interest. Hewitt is jointly liable for the full amount; he filed for bankruptcy and only $200,000 was recovered from his insurer. Rodrigues is jointly liable for $850,000 of the full $1.1 million plus interest. If Rodrigues pays his full amount, UPW will not be receiving more than its total loss and will not receive duplicative damages.

*Conclusion*

For the above reasons, Plaintiffs request that the Motion for Reconsideration and New Trial be denied.

DATED: Honolulu, Hawaii, April 11, 2008.

_____

CHARLES A. PRICE
JAMES E. T. KOSHIBA
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STEVEN DE COSTA, IN HIS REPRESENTATIVE CAPACITY AS CHAIRPERSON OF THE BOARD OF TRUSTEES OF UNITED PUBLIC WORKERS, AFSCME, LOCAL 646, AFL-CIO, MUTUAL AID FUND TRUST, REAL PARTY IN INTEREST UNITED PUBLIC WORKERS UNION, AFSCME, LOCAL 646, AFL-CIO, <br><br>        Plaintiff, <br><br>    vs. <br><br> GARY RODRIGUES, <br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    CIVIL NO. CV03-00598 DAE LEK <br><br>)   CERTIFICATE OF SERVICE |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date noted below, a copy

of the foregoing document was duly served upon the following by hand delivery at

the last known address as indicated below:

> ERIC A. SEITZ, ESQ.
> LAWRENCE I. KAWASAKI, ESQ.
> 820 Mililani Street, Suite 714
> Honolulu, Hawaii 96813
>
> Attorneys for Defendant
> GARY RODRIGUES

DATED:  Honolulu, Hawaii, April 11, 2008.

_____
JAMES E.T. KOSHIBA
CHARLES A. PRICE
Attorneys for Plaintiffs