IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STEVEN DECOSTA IN HIS REPRESENTATIVE CAPACITY AS CHAIRPERSON OF THE BOARD OF TRUSTEES OF UNITED PUBLIC WORKERS, AFSCME, LOCAL 646, AFL-CIO, MUTUAL AID FUND TRUST, REAL PARTY IN INTEREST UNITED PUBLIC WORKERS, AFSCME, LOCAL 646, AFL-CIO,<br><br>Plaintiff,<br><br>vs.<br><br>GARY RODRIGUES,<br><br>Defendant. | CIVIL NO. CV03-00598 DAE LEK<br><br>MEMORANDUM IN SUPPORT |

**MEMORANDUM IN SUPPORT**

I.  **BACKGROUND**

This case involves the United Public Workers Mutual Aid Fund Trust ("MAF"), an ERISA-governed voluntary employee welfare benefit plan providing hospitalization benefits for participating members. (Findings of Facts and Conclusions of Law, filed March 20, 2008, at ¶2, ¶64). Defendant Gary Rodrigues ("Rodrigues") served as MAF's Plan Administrator from 1984 to 2002. (Id. at ¶11.) The MAF's Board of Trustees ("the Board") consisted of

blue-collar workers who became members of the Board by virtue of being elected to other union positions. (Id. at ¶¶8-9.) As the Plan Administrator, Rodrigues attended MAF board meetings and made investment recommendations. (Id. at ¶11.)

In 1998, Albert Hewitt, MAF's investment advisor, recommended to Rodrigues that MAF invest in Best Rescue Systems, Inc. ("Best Rescue"), a company developing a product to rescue people from high-rise buildings. (Id. at ¶16.) Best Rescue was a new start-up company in Florida that did not have a completed business plan, marketing plan, shareholder agreement, or product videos. (Id. at ¶20.) Rodrigues did not conduct any due diligence himself into Best Rescue; he simply relied on Hewitt. (Id.)

In November 1998, MAF made a $250,000 loan to Best Rescue, accompanied by a Security Agreement, executed by Rodrigues, that did not list the company's collateral in any detail. (Id. at ¶¶21-23.) Rodrigues did not consult an attorney or other independent advisor regarding the investment. (Id. at ¶26.) Between February and December 1999, MAF loaned Best Rescue an additional $850,000, which was not secured by additional collateral. (Id. at ¶¶29; 33; 36; 37;& 39.) Rodrigues approved and signed the Security Agreement and approved the Promissory Notes for all six loans, but he never showed the MAF Board the

Security Agreement or Promissory Notes. (Id. at ¶72.)

The MAF's Board meeting minutes were devoid of any evidence indicating that any motions were made, seconded, and/or carried regarding MAF's loans to Best Rescue. (Id. at ¶¶31, 34, 35).

In December 1999, AFSCME, the international union, conducted an audit and recommended that Rodrigues demand repayment of the loans because all but one of the loans were in default. (Id. at ¶40.) On December 15, 1999, Rodrigues requested in writing to Best Rescue that all of MAF's investments, including interest, be returned. (Id.) On January 31, 2000, MAF filed a lawsuit against Best Rescue to collect the $1.1 million. (Id. at ¶43.) Subsequently, both Hewitt and Best Rescue filed for bankruptcy. (Id. at ¶¶43 & 46.)

Hewitt was convicted of federal felony charges in connection with the Best Rescue loans (Id. At 44). In November 2002, Rodrigues was convicted of money laundering, embezzlement, and mail fraud in connection with other UPW sponsored plans. (Id. at ¶48.)

This action was initiated against Rodrigues on October 31, 2003 for (1) breach of fiduciary duties; (2) breach of fiduciary duties by a co-fiduciary, and (3) engaging in prohibited transactions, under Sections 1104(a)(1)(A), 1105, and 1106(a)(1)(D) of the Employee Retirement Income Security Act of 1974

("ERISA"). (Id. at ¶¶49-50.)

Following the bench trial held on February 29, March 6 and 7, 2008, Judge Ezra ruled that Rodrigues breached his fiduciary duties and made imprudent investment decisions with respect to five of the six loans to Best Rescue. The Court issued its Findings of Fact and Conclusions of Law on March 20, 2008. On March 31, 2008, the Court issued its Amendment to Findings of Fact and Conclusions of Law (which amended ¶126 to provide: "The Court hereby directs the Clerk of the Court to enter judgment in favor of Plaintiffs and against Defendant in the amount of $850,000.")

The Court's Conclusions of Law, among other things, concluded as follows:

- "[E]vidence is sufficient to establish by far more than a preponderance of evidence that Defendant exercised discretionary authority and control over the management of the assets of the MAF trust, and therefore, acted as a fiduciary in making the loans to Best Rescue." (Id. at ¶84.)

- "Having failed to conduct an independent investigation and/or question Hewitt after numerous red flags were raised, Defendant breached his fiduciary duties with respect to all loans to Best Rescue other than the initial loan." (Id. at ¶103.)

- "[D]efendant is liable under this section of ERISA [i.e., 29 U.S.C. § 1104(a)(1)(A)] for making an imprudent investment." (Id. at ¶105.)

- "Plaintiffs have shown by a preponderance of the evidence that by making imprudent investments, Defendant enabled Hewitt to breach

4

his fiduciary duties. Therefore, Defendant is liable under this section [*i.e.*, 29 U.S.C § 1105]. (Id. at ¶109.)

- "Defendant is also liable for pre-judgment interest and attorney's fees and costs. The attorney's fees application is referred to the Magistrate Judge upon Plaintiff's Motion for a Report and Recommendation. In their Motion to the Magistrate Judge, Plaintiffs must include the appropriate statute or legal basis for the pre-judgment interest rate and appropriate date of accrual." (Id. at ¶127.)

Judgment was entered in favor of Plaintiffs and against Rodrigues on March 31, 2008. Rodrigues subsequently filed a Motion for Reconsideration and New Trial. The Court issued its order denying Defendant's Motion for Reconsideration and New Trial on May 2, 2008.

## II. ARGUMENT

### A. Introduction

Judge Ezra has already determined that Plaintiffs are entitled to pre-judgment interest, attorney's fees, and costs. Therefore, the question is not whether Plaintiffs are entitled to these items; rather, in what amount.

### B. Plaintiffs are Entitled to Pre-Judgment Interest in the Amount of $94,707.20

The district court has discretion to award pre-judgment interest on an award in ERISA cases. Blanekenship v. Liberty Life Assurance Co. of Boston, 486 F.3d 620, 627 (9th Cir. 2007). Per the Findings of Fact and Conclusions of

Law, the Court ordered pre-judgment interest to be awarded in this case. (Id. at ¶127). "[T]he interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of pre-judgment interest unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate." Id., *quoting* Grosz-Salomon v. Paul Revere Life Ins. Co., 237 F.3d 1154, 1163-64 (9th Cir. 2001). 28 U.S.C. § 1961 calculates post-judgment interest at a rate equal to the "weekly average 1-year constant maturity Treasury yield as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."

In this case, the Judgment was entered on March 31, 2008. The weekly average 1-year constant maturity Treasury yield for the week of March 24, 2008 was **1.35 percent**. (*See* Exhibit "A".) This translates to a daily interest rate of 0.0036935 percent (*i.e,* 0.0135 ÷ 365.5) or **$31.36** per day (*i.e.*, $850,000 x 0.000036935).

"Prejudgment interest runs from the date when the damages are of a nature to be certain or capable of being made certain by calculation and when the exact sum due to plaintiff is made known to the defendant." Highlands Ins. Co. v. Continental Casualty, Co., 64 F.4d 514, 521 (9th Cir. 1995) (citing California law). Here, the evidence shows that Rodrigues demanded repayment of the Best

6

Rescue loans on December 15, 1999. The loans were in default and the exact sum due was known to Rodrigues at that time; thus, pre-judgment interest should accrue from this loan repayment demand date of December 15, 1999. Pre-judgment interest, therefore, accrues for a total of 3029 days. (*i.e.*, December 15, 1999 to March 31, 2008). Consequently, $94,707.20 (*i.e.* $31.36 x 3020 days) in pre-judgment interest should be added to the principal amount of $850,000.

    C.    As the Prevailing Party in an ERISA Case, Plaintiffs are Entitled to Attorney's Fees and Costs.

Under 29 U.S.C. § 1132(g), a court, in its discretion, may award fees and costs in an ERISA claim. The general rule is that the prevailing party on an ERISA claim is entitled to attorney's fees, "unless special circumstances would render such an award unjust." United Steelworkers of America v. Retirement Income Plan for Hourly-Rated Employees of ASARCO, 512 F.3d 555, 564 (9th Cir. 2008), *quoting* Hensley v. Eckerhart, 461 U.S. 424, 429 (1983). Taxes on attorney's fees are also recoverable. *See, e.g.*, Feher v. DLIR, 561 F. Supp. 757, 769 (D. Haw. 1983) (awarding taxes on attorney's fees award in Title VII case); *see also* Gamber v. Bowen, 823 F.2d 242, 245 (8th Cir. 1987) (awarding taxes on attorney's fees award). The Court has already ordered that Plaintiffs are entitled to receive fees and costs, but, for the sake of completeness, the factors justifying

the Court's decision are briefly addressed below.

In determining whether a party is entitled to attorney's fees under 29 U.S.C. § 1132(g), the district court should consider the following five factors, among others:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

Hummell v. S. E. Rykoff & Co., 634 F.2d 446, 453 (9th Cir. 1980).

Plaintiffs address each of the above factors in order. ***First***, Rodrigues, a fiduciary, used his leadership position to control, manage, and make investment decisions for MAF and did so without conducting proper investigation or due diligence, thereby breaching his fiduciary duties. This demonstrates great culpability on his part for the losses suffered by MAF. ***Second***, upon information and belief, Rodrigues owns or has a beneficial interest in at least two real properties of value and is currently asserting an unliquidated, and hotly contested, claim against UPW for allegedly owing accrued vacation and sick leave that Rodrigues values at hundreds of thousands of dollars. (*See* Declaration of

Counsel, at ¶9.)  **Third,** the MAF is still currently in existence and an award of attorney's fees and costs will deter any current board members and/or plan administrators from breaching their fiduciary duties to the MAF and its beneficiaries.  **Fourth**, the present lawsuit was brought on behalf of the participating beneficiaries to recoup funds that Rodrigues caused to be improperly invested.  **Fifth**, Plaintiffs are the prevailing party in this case, as the Court rendered judgment in favor of Plaintiffs and against Rodrigues.

Based on the Court's prior Conclusions of Law, and supported by the considerations above, Plaintiffs are entitled to the following attorney's fees and costs amounts, which are itemized/described in the attached Exhibit "B."

| | |
|---|---|
| Attorney's Fees: | $69,367.50 |
| Taxes on Attorney's Fees: | $ 3,172.96 |
| Costs: | $ 4,491.22 |
| **Total:** | **$77,031.68** |

D.  The Present Motion is Timely Because Defendant's Motion for Reconsideration and New Trial Tolled the Filing Deadline.

Pursuant to Fed. R. Civ. P. Rule 54(d)(2)(B) and LR Rule 54.3, a motion for attorney's fees and non-taxable expenses must be filed within fourteen days of entry of judgment.  This fourteen-day requirement is tolled pending the outcome of a post-trial motion filed under Rules 50, 52, or 59.  Bailey v. County

9

of Riverside, 414 F.3d 1023, 1025 (9th Cir. 2005); *see also* Berry v. Hawaii Express Serv., 2007 U.S. Dist. LEXIS 15077 (D. Haw. 2007). Therefore, a Rule 54(d)(2) motion for fees is timely if filed no later than fourteen days after the ruling of a Rule 50(b), Rule 52(b), or Rule 59 motion. Id. In this case, the Court's Order denying Defendant's Motion for Reconsideration and New Trial, made pursuant to Rule 59, was filed on May 2, 2008. Therefore, this motion is timely filed.

### III.   CONCLUSION

Based on the above, Plaintiffs are entitled to (1) pre-judgment interest in the amount of **$94,707.20**; (2) attorney's fees, inclusive of taxes, in the amount of **$72,540.46** and (3) costs in the amount of **$4,491.22.**

DATED:   Honolulu, Hawaii, May 16, 2008.

_____
CHARLES A. PRICE
Attorney for Plaintiffs